COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, McClanahan and Senior Judge Coleman
Argued at Salem, Virginia


PATRICIA ANN JUSTUS

MEMORANDUM OPINION* BY
v.        Record No. 2439-04-3               JUDGE LARRY G. ELDER
                                             MAY 16, 2006
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF BUCHANAN COUNTY
Keary R. Williams, Judge

Benjamin A. Street (Street Law Firm, LLP, on brief), for appellant.

Robert H. Anderson, III, Senior Assistant Attorney General (Judith
Williams Jagdmann, Attorney General, on brief), for appellee.


Patricia Ann Justus (appellant) appeals from her convictions for two counts of malicious

wounding and one count each of statutory burglary and destruction of property, entered upon her

pleas of guilty.  On appeal, she contends the Commonwealth's withholding of exculpatory

evidence and the ineffectiveness of her trial counsel prevented her from entering those pleas

knowingly, intelligently, and voluntarily and, as a result, that the trial court's refusal to allow her

to withdraw the pleas prior to sentencing was an abuse of discretion.  We hold the

Commonwealth did not violate any duty to produce exculpatory evidence.  We hold further that,

to the extent appellant's claim is cognizable on direct appeal, the evidence in the record, viewed

in the light most favorable to the Commonwealth, supports the trial court's denial of appellant's

request to withdraw her guilty pleas.  Thus, we affirm the challenged convictions.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.

Pursuant to Code § 19.2-296, absent "manifest injustice," "[a] motion to withdraw a plea of guilty or *nolo contendere* may be made only before sentence is imposed or imposition of a sentence is suspended . . . ."  Because appellant sought to withdraw her pleas before sentencing, the manifest injustice standard does not apply.  As to such a request made prior to imposition of sentence, the Virginia Supreme Court has provided that,

> [i]n the absence of statutory regulation or established practice, whether or not an accused should be allowed to withdraw a plea of guilty for the purpose of submitting one of not guilty is a matter that rests within the sound discretion of the trial court and is to be determined by the facts and circumstances of each case.

Parris v. Commonwealth, 189 Va. 321, 324, 52 S.E.2d 872, 873 (1949).  Under accepted principles, a motion to withdraw a guilty plea

> "should not be denied, if timely made, and if it appears from the surrounding circumstances that the plea of guilty was submitted in good faith under an honest mistake of material fact or facts, or if it was induced by fraud, coercion or undue influence and would not otherwise have been made."

Hoverter v. Commonwealth, 23 Va. App. 454, 463-64, 477 S.E.2d 771, 775 (1996) (quoting Parris, 189 Va. at 324, 52 S.E.2d at 873); see also Manning v. Commonwealth, 22 Va. App. 252, 254-55, 468 S.E.2d 705, 706-07 (1996) (*en banc*).  The Virginia Supreme Court has observed further that,

> "[g]enerally, . . . the withdrawal of a guilty plea should not be denied in any case where it is in the least evident that the ends of justice will be subserved by permitting not guilty to be pleaded in its place.  The least surprise or influence causing a defendant to plead guilty when he has any defense at all should be sufficient grounds for permitting a change of plea from guilty to not guilty. Leave should ordinarily be given to withdraw a plea of guilty if it was entered by mistake or under a misconception of the nature of the charge; through a misunderstanding as to its effect; through fear, fraud or official misrepresentation; was made involuntarily for any reason; or even where it was entered inadvisedly, if any reasonable ground is offered for going to the jury."

Parris, 189 Va. at 325, 52 S.E.2d at 874 (quoting 14 Am. Jur. Criminal Law § 287 (1938)). "'[T]he accused should be permitted to withdraw a plea of guilty entered unadvisedly when application therefore is duly made in good faith and sustained by proofs, and a proper offer is made to go to trial on a plea of not guilty.'" Id. at 325-26, 52 S.E.2d at 874 (quoting Abbott, Criminal Trial Practice § 118, at 212 (4th ed.)).

On appellate review, "[t]he court's finding as to the credibility of witnesses and the weight of the evidence in support of a motion to withdraw a guilty plea will not be disturbed unless plainly wrong or without evidence to support it." Jones v. Commonwealth, 29 Va. App. 503, 512, 513 S.E.2d 431, 435 (1999). Further, claims of ineffective assistance of counsel may not be raised in any kind of direct appeal, including one involving a court's refusal to allow a defendant to withdraw a guilty plea. See Hall v. Commonwealth, 30 Va. App. 74, 82, 515 S.E.2d 343, 347 (1999) (stating principle and considering claim of counsel's shortcomings only in context of whether plea was voluntary).

A.

EXCULPATORY EVIDENCE OF IMPEACHMENT
AND IMPACT ON VOLUNTARINESS OF PLEAS

Appellant contends her guilty pleas were involuntary in part because the Commonwealth failed to notify her attorney that its primary witness, Harold Justus, was a convicted felon. We hold the fact that appellant's attorney may not have known Harold Justus was a convicted felon lacked legal significance in the context of our examination of the voluntariness of appellant's guilty pleas.

"Although no general constitutional right to discovery exists in a criminal case in this Commonwealth, due process requires that the prosecution produce evidence favorable to the accused *upon request* when that evidence is material either to guilt or to punishment. Brady v. Maryland, 373 U.S. 83, 87 (1963)." Keener v. Commonwealth, 8 Va. App. 208, 212, 380 S.E.2d

21, 23 (1989) (emphasis added) (other citations omitted). Exculpatory evidence includes evidence that impeaches the credibility of a witness for the Commonwealth. Robinson v. Commonwealth, 231 Va. 142, 150, 341 S.E.2d 159, 164 (1986).

Appellant relies on our holding in Jefferson v. Commonwealth, 27 Va. App. 477, 487, 500 S.E.2d 219, 224 (1998), that a "defendant was entitled to withdraw [a] disputed [*nolo contendere*] plea if the record established 'any defense at all' to the indictments, *and* it was reasonably probable that nondisclosure of the exculpatory impeachment evidence had the 'least . . . influence' on such plea." We conclude our decision in Jefferson does not apply here because no Brady violation occurred.

"'The purpose of the Brady rule is . . . to assure that [the defendant] will not be denied access to exculpatory evidence known to the government but unknown to him.'" Lugo v. Munoz, 682 F.2d 7, 10 (1st Cir. 1982) (quoting United States v. Ruggiero, 472 F.2d 599, 604 (2d Cir. 1973)). Thus, Brady is not violated "'if the evidence in question is available to the defendant from . . . sources [other than the government],'" United States v. Wilson, 901 F.2d 378, 380 (4th Cir. 1990) (quoting United States v. Davis, 787 F.2d 1501, 1505 (11th Cir. 1986)), and would have been "readily available to a diligent defense attorney" through those other sources, Lugo, 682 F.2d at 9.

Here, we assume without deciding that appellant's request in district court for exculpatory evidence pursuant to Rule 7C:5 constituted a request sufficient to invoke Brady for purposes of the circuit court proceeding. We also assume without deciding that the Commonwealth's response that its file was open for inspection was not sufficient to satisfy Brady's requirements. Nevertheless, we hold no Brady violation occurred because appellant admitted she knew the Commonwealth's primary witness, Harold Justus, her ex-husband and the father of her child, was a convicted felon. She contends *she* could not have been expected to

understand the legal significance of this fact to her case. We hold that *appellant's* understanding of the legal significance of this fact was irrelevant and that, because this information was known to appellant, it was also information "readily available to a diligent defense attorney," Lugo, 682 F.2d at 9, upon reasonable inquiry. Thus, no due process violation occurred.

B.

PROFFERED EVIDENCE OF DEFENSES
AND IMPACT ON VOLUNTARINESS OF PLEAS

Appellant further contends the court abused its discretion in refusing her request to withdraw her guilty pleas because she established, by proffer, "any defense at all" and because inadequate investigation by and advice from her court-appointed attorney rendered her pleas involuntary. To the extent appellant's claims amount to assertions that her counsel was ineffective, they are not cognizable on direct appeal in this Court. See Hall, 30 Va. App. at 82-83, 515 S.E.2d at 347. To the extent appellant frames these claims as relating solely to her request to withdraw her guilty pleas--based on her claims that she did not enter them voluntarily, knowingly, and intelligently--rather than claims of ineffective assistance of counsel, we hold the evidence in the record, viewed in the light most favorable to the Commonwealth, supports the trial court's denial of appellant's motion to withdraw her pleas.

Although appellant claims "substantial and compelling evidence" of innocence, the factual bases for her proffered defenses, as well as the identities of witnesses who might support those defenses, were known to her at the time she entered her guilty pleas. In conjunction with the motion to withdraw her pleas, appellant proffered evidence that she resided at Harold Justus's residence on the night in question and, thus, could not have committed statutory burglary. Appellant surely knew when she entered her guilty plea where she resided on the night of the charged offenses. Appellant also proffered evidence from her aunt, Joyce Justus--who drove her to Harold Justus's home and was present at the scene during at least part of the

altercation--that she acted in self-defense.  Again, however, appellant surely knew when she entered her guilty pleas how the altercation began, whether she acted in self-defense, and that Joyce Justus was present at the scene and might have information useful in defense of the charges.  Thus, appellant has not shown "surprise" or an "honest mistake of material fact."  See id. at 80-82, 515 S.E.2d at 346-47.  Further, the Commonwealth's evidence was sufficient to support a finding that appellant lacked permission to be on the premises and committed the offenses of  burglary, malicious wounding, and destruction of property as charged.

Therefore, the deficiency, *if any*, was in one of the following:  appellant's failure to communicate what she knew to her attorney; her attorney's failure to elicit these facts from appellant or the other potential witnesses; or the attorney's failure to appreciate or explain to appellant the legal significance of these facts or to use them to mount a defense.  In the context of this case, such deficiencies, if any, implicate potential claims of ineffective assistance of counsel, which, as we have already said, are not cognizable on direct appeal.  See id. at 82, 515 S.E.2d at 347.  Further, we hold, for the reasons discussed below, that the record before us in this direct appeal does not compel the conclusion that appellant's guilty pleas were involuntary and, thus, supports the trial court's denial of appellant's request to withdraw her pleas.

Rule 3A:8(b)(1) provides that "[a] circuit court shall not accept a plea of guilty . . . without first determining that the plea is made voluntarily with an understanding of the nature of the charge and the consequences of the plea."  The purpose of a court's engaging in a colloquy on the record with a defendant seeking to plead guilty is "to forestall ' . . . proceedings' that delay the finality of convictions in criminal cases."  Anderson v. Warden, 222 Va. 511, 515, 281 S.E.2d 885, 888 (1981) (quoting Boykin v. Alabama, 395 U.S. 238, 244, 89 S. Ct. 1709, 1712-13, 23 L. Ed. 2d 274, 280 (1969)).

The fact that a defendant enters a plea of guilty on the advice of counsel does not, standing alone, render such a plea involuntary. Schnautz v. Beto, 416 F.2d 214, 215-16 (5th Cir. 1969). The Supreme Court has held in regard to habeas corpus proceedings that

> the truth and accuracy of representations made by an accused as to the adequacy of his court-appointed counsel and the voluntariness of his guilty plea will be considered conclusively established by the trial proceedings, unless the [accused] offers a valid reason why he should be permitted to controvert his prior statements.

Anderson, 222 Va. at 516, 281 S.E.2d at 888. We hold that where an appellant contends on direct appeal that his plea was involuntary because his counsel was ineffective and the trial record does not *prove* "a valid reason why [the accused] should be permitted to controvert his prior statements" of the voluntariness of his plea and the adequacy of counsel, see id., the appellant may seek to offer evidence of such a reason only in a habeas corpus proceeding.[1]

Here, the record on appeal contains a transcript of the extended plea colloquy in which the trial court engaged with appellant prior to accepting her pleas of guilty, and the record does not prove "a valid reason why [the accused] should be permitted to controvert [her] prior

---

[1] Although we make no comment on the likelihood of success, we note that appellant may, in a separate proceeding, challenge the voluntariness of her plea via a petition for a writ of habeas corpus alleging "inadequate assistance of counsel rendering [her] guilty plea[s] involuntary." Anderson, 222 Va. at 515, 281 S.E.2d at 888.

> From the standpoint of an attorney charged with ineffective representation, the ordinary criminal trial record is insufficient to show the reasons counsel employed or did not employ a particular trial tactic. Often, actions that appear inexplicable are made readily understandable when the actor is given a chance to explain.

> A separate habeas corpus proceeding affords both sides an opportunity to develop fully the factual and legal bases of their positions with respect to a claim of ineffective assistance of counsel. . . .

Walker v. Warden, 224 Va. 568, 571, 299 S.E.2d 698, 699 (1983) (citations omitted).

statements" regarding the voluntariness of her pleas and the adequacy of counsel insofar as the advice of counsel impacted the voluntariness of her pleas, see id.

The record establishes that appellant's court-appointed counsel represented her at her preliminary hearing on the two malicious wounding charges on October 7, 2003, and may have represented her for a preliminary hearing on one of the other charges as well. Also, appellant was out on bond for at least a month prior to the date scheduled for trial, November 13, 2003, and the trial court emphasized to her on October 13, 2003, that one of the conditions of her bond was that she "remain in contact with [court-appointed] Counsel and be ready for trial on November the 13th." The record contains no indication regarding appellant's efforts, if any, to contact court-appointed counsel to prepare for trial during this period of time.

When appellant appeared for trial on November 13, 2003, she indicated upon initial questioning from the circuit court that she had spoken with her attorney only briefly, and the court allowed her additional time to confer with counsel. The record does not indicate for precisely how long she and her attorney conferred, but when the trial court called appellant and her attorney back into the courtroom and inquired whether appellant had "talked with Counsel adequately" about "[her] pleas [to] the[] four indictments," she indicated that she had. After the clerk of court recited each of the offenses for which appellant stood indicted--which charged damage to or destruction of the "dwelling house" of Harold Justus, "Statutory Burglary of the Dwelling House of Harold Justus," "Malicious Bodily Injury" of Tina Justus, and "Malicious Bodily Injury" of Harold Justus--appellant pleaded guilty to each of the named offenses. The trial court then questioned appellant extensively about the voluntariness of her pleas. Appellant answered, in the affirmative, questions about whether she and counsel talked about the elements of the offenses and what the Commonwealth would have to prove in order to convict her; defenses she would have to the Commonwealth's evidence; and witnesses that she might call in

her behalf. Appellant responded affirmatively when asked whether she personally made the decision to enter the guilty pleas after discussing those things with her attorney. Appellant also indicated by her affirmative responses to the court's questions that she was pleading guilty freely and voluntarily "*[b]ecause [she] admit[ted] that [she] did the acts charged in the indictments.*" (Emphasis added). Finally, she indicated by additional affirmative responses that she understood her guilty pleas constituted a waiver of her right to confront and cross-examine the Commonwealth's witnesses, a waiver of her right to call her own witnesses, and a waiver of her right to trial by jury and appeal. The trial court then informed appellant of the sentencing ranges for each of the crimes, and it also informed her that, if it accepted her guilty pleas, it could sentence her to a total of ten years to sixty years and twelve months in jail. When the court asked appellant whether she understood the sentencing range, the court's questions, and the proceedings, she responded, "Yes, sir," to each of the court's three questions. She denied having ingested any drugs that would have "inhibited or prevent[ed] [her] from being able to talk to [her] lawyer, understand these questions or understand this proceeding," and she responded affirmatively when asked whether she was "satisfied with the services of [her] Court Appointed Counsel."

The plea colloquy gives no indication that the pleas were not voluntary, knowing, and intelligent, and no other evidence in the record, viewed in the light most favorable to the Commonwealth, compels the conclusion that appellant's pleas were not voluntary, knowing, and intelligent. In light of the earlier plea colloquy, the court was entitled to reject as not credible the proffered testimony that appellant was residing with her ex-husband when she entered his residence on September 10, 2003, that she merely acted in self-defense when she hit Harold Justus and Tina Justus on that same date, and that she had had insufficient time to confer with

counsel prior to entering her guilty pleas on November 13, 2003. Thus, we hold the court did not abuse its discretion in refusing to allow appellant to withdraw her guilty pleas.

## II.

For these reasons, we hold the evidence supports the trial court's denial of appellant's request to withdraw her guilty pleas. Thus, we affirm the challenged convictions.

<u>Affirmed.</u>