COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Coleman and Lemons
Argued at Salem, Virginia


JAMIE MICHAEL HALL
                                              OPINION BY
v.    Record No. 1761-98-3        JUDGE SAM W. COLEMAN III
                                            JUNE 15, 1999
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF WISE COUNTY
             Kenneth E. Trabue, Judge Designate

          Anthony E. Collins (Collins & Collins, on
          brief), for appellant.

          John H. McLees, Jr., Assistant Attorney
          General (Mark L. Earley, Attorney General,
          on brief), for appellee.


     Jamie Michael Hall was indicted for the murder of Timothy

Matthew Earls, the attempted murder of Danny Culbertson, and

two counts of use of a firearm in the commission of a felony.

In accordance with a plea agreement, Hall entered guilty pleas

under the authority of North Carolina v. Alford, 400 U.S. 25

(1970), to first-degree murder, attempted second-degree murder,

and one firearm count.  In exchange, the Commonwealth agreed to

dismiss the second firearm charge, to reduce the attempt charge

to attempted second degree murder, and to recommend that the

attempted murder sentence run concurrently with the murder

sentence.  The court accepted the pleas.  Three months later,

Hall moved to withdraw his pleas based on evidence he discovered

during the sentencing hearing which he asserts was different from what he had previously understood the Commonwealth's evidence to be. The trial court denied Hall's motion, and Hall appeals that denial. Finding no error, we affirm the trial court's decision.

<u>BACKGROUND</u>

Hall shot and killed Earls early in the morning after a night of drinking with acquaintances, including Earls and Culbertson. After a series of quarrelsome telephone calls, Hall, Culbertson, and Earls agreed to meet on the road near Earls' home. Hall arrived at 2:00 a.m., and the three drove in Hall's truck to a remote location known as the "Nettle Patch."

At the Nettle Patch, they argued about women. Hall exited the truck, produced a rifle, and fired twice into the air. Shortly thereafter, Hall shot Earls in the face. Hall, rifle in hand, then chased Culbertson around the truck. As Culbertson fled into the woods, Hall screamed that Culbertson would have to watch Earls die.

The indictment alleged that when Culbertson was about twenty-five yards away, Hall fired a fourth shot that, although intended for Culbertson, missed. Hall then approached Earls and fired a fifth shot directly into Earls' temple. Hall drove away only to return approximately twenty minutes later. Unable to find Culbertson, he drove off.

-

Before accepting Hall's <u>Alford</u> pleas, the trial court questioned Hall to determine whether he entered the guilty pleas freely, voluntarily, and knowingly.  Hall stated that he had sufficiently discussed the matter with his attorney, that he understood the elements of the crimes charged, and that he understood the differences between first-degree murder, second-degree murder, and voluntary manslaughter.  Hall stated that he was entering the pleas to avoid the unpredictable risks of prosecution.  Hall acknowledged his understanding that he was waiving his right to a jury trial, his right to remain silent, his right to require the Commonwealth to prove all the elements of the charged crimes, his right to cross-examine and confront witnesses, and his right to appeal the convictions.  Hall further stated that no one had threatened or coerced him into entering the pleas.  The trial judge explained the maximum sentence for each offense.  Hall indicated that it was his decision to plead guilty and that he was satisified with the services of his attorney.

For the purposes of that hearing, Hall stipulated to the facts in the indictment without conceding that the facts were true.  The defense attorney stated that insofar as he was aware, the Commonwealth fully complied with the trial court's discovery orders.  Finally, Hall agreed that if the evidence were presented on pleas of not guilty, and believed beyond a

reasonable doubt by the fact finder, the evidence would be sufficient to establish his guilt on the indictments.

During the sentencing hearing, Culbertson, the only eyewitness to the crime, testified that although he heard the fourth shot while he was fleeing into the woods, he did not see Hall point the weapon in his direction. He also stated that he was not sure if he heard a fifth shot.

The police recovered three expended shell casings near Earls' body and two from Hall's truck -- one from the "bug screen" on the hood of the truck and one on the floorboard.

Hall testified that he accidentally fired the shots that killed Earls. Hall presented expert testimony to show that due to alcohol impairment, his actions only amounted to manslaughter. Noting the peculiarity of pleading guilty to murder, then presenting evidence of manslaughter, the trial judge asked Hall whether he was asking to withdraw his pleas.

Shortly thereafter, Hall moved to withdraw the guilty pleas, contending that during the sentencing hearing, he became aware of several defenses to the charges. Hall argued that he had pled guilty under the mistaken belief that Culbertson would testify that he saw Hall point the gun in his direction. Culbertson, who was the only eyewitness, had refused Hall's request for a pretrial interview. Because the indictment charged that Hall aimed the weapon at Culbertson, Hall claims to have erroneously assumed that Culbertson would testify that he

-

saw Hall aim the weapon in his direction.  The trial court denied the motion.

## ANALYSIS

On appeal, Hall argues that he was entitled to withdraw his guilty pleas during the sentencing hearing because he had not entered the pleas voluntarily, knowingly, and intelligently and because he made the decision to plead guilty without the effective assistance of counsel.

Whether a defendant should be permitted to withdraw a guilty plea rests within the sound discretion of the trial court to be determined based on the facts and circumstances of each case.  See Parris v, Commonwealth, 189 Va. 321, 324-25, 52 S.E.2d 872, 873-74 (1949); Hoverter v. Commonwealth, 23 Va. App. 454, 463-64, 477 S.E.2d 771, 775 (1996).

> No fixed or definite rule applicable to and determinative of all cases can be laid down. However, the motion should not be denied, if timely made, and if it appears from the surrounding circumstances that the plea of guilty was submitted in good faith under an honest mistake of material fact or facts, or if it was induced by fraud, coercion or undue influence and would not otherwise have been made.

Parris, 189 Va. at 324, 52 S.E.2d at 873.  Generally, a trial court should permit withdrawal of a guilty plea whenever permitting withdrawal of the guilty plea will promote the ends of justice.

> "The least surprise or influence causing a defendant to plead guilty when he has any

-

> defense at all should be sufficient grounds
> for permitting a change of plea from guilty
> to not guilty. Leave should ordinarily be
> given to withdraw a plea of guilty if it was
> entered by mistake or under a misconception
> of the nature of the charge; through a
> misunderstanding as to its effect; through
> fear, fraud or official misrepresentation;
> was made involuntarily for any reason; or
> even where it was entered inadvisedly, if
> any reasonable ground is offered for going
> to the jury."

Id. at 325, 52 S.E.2d at 874 (quoting 14 Am. Jur. Criminal Law § 287 (1938)).

Before accepting the pleas, the trial judge carefully and extensively questioned and instructed Hall to ensure that he was entering the pleas freely, voluntarily, and with a clear understanding as to their effect. Based on our review of that transcript, we find that Hall entered the pleas freely, voluntarily, and with a complete and intelligent understanding as to their effect.

Hall, however, contends the trial court should have permitted him to withdraw his guilty pleas because the evidence at the sentencing hearing supported manslaughter and attempted manslaughter convictions, not murder and attempted murder. Although some evidence presented at the sentencing hearing may have supported a manslaughter conviction, Hall, not the Commonwealth, presented that evidence. Hall testified that he shot Earls by accident, and his expert testified that Hall's alcohol impairment would have impaired his ability to form

-

malice aforethought.[1]  This evidence was fully available to Hall when he pled guilty.  Thus, Hall did not suffer from an honest mistake of material fact when he pled guilty to the murder and attempted murder charges.

Hall also contends he was entitled to withdraw his plea of guilty to the attempted murder charge because Culbertson's testimony at the sentencing hearing suggested a possible defense.  Hall argues that when he pled guilty to the attempted murder charge, he operated under the mistaken assumption that Culbertson would testify that he saw Hall point a gun at him.  The indictment alleged that Hall aimed the gun at Culbertson.  Culbertson had refused all pretrial interviews with Hall or Hall's attorney and because Culbertson was the only eyewitness to the crime, Hall contends the language of the indictment led him to misunderstand the nature of the evidence against him.

Hall had no right to pretrial discovery of the Commonwealth witnesses' testimony.  See Rule 3A:11.  The Commonwealth had evidence to support the indictment and did not misrepresent the amount or quality of the evidence against Hall.  Thus, the Commonwealth did not induce by fraud or undue influence whatever

---

[1]In response to the Commonwealth's motion to strike this evidence as beyond the expert's qualifications, the trial judge stated that he would consider the testimony for the effect that the alcohol had and in mitigation for sentencing purposes, but not as to whether the alcohol impaired Hall's ability to form the requisite criminal intent.

-

erroneous evidentiary conclusions Hall reached based on his knowledge of the events or the indictment's language.

Furthermore, regardless of whether Culbertson actually saw Hall point the weapon, the Commonwealth had sufficient evidence to support a conviction on the indictment for attempted murder, and Hall was aware of the nature of the evidence against him. Culbertson testified that after Hall first shot Earls, Hall chased Culbertson around the truck with his weapon in hand. As Culbertson fled into the woods, Hall discharged a fourth round. After briefly leaving the scene, Hall returned and slowly circled the area. This evidence supported the inference that Hall shot at Culbertson, missed him, and returned later to search for him. Therefore, the evidence was sufficient to support the Commonwealth's charge of attempted murder, and could have supported Hall's conviction before a jury. Accordingly, Hall's alleged misconception regarding Culbertson's testimony was not a mistake of material fact entitling him to withdraw his guilty plea. See Jefferson v. Commonwealth, 27 Va. App. 477, 488, 500 S.E.2d 219, 225 (1998) (holding that prosecution's improper failure to disclose exculpatory evidence prior to defendant's plea of nolo contendere did not entitle defendant to withdraw the plea where the withheld evidence was immaterial to the charges and its nondisclosure could not have influenced defendant's choice to enter pleas).

Claims of ineffective assistance of counsel may not be raised on direct appeal. See Browning v. Commonwealth, 19 Va. App. 295, 297 n.2, 452 S.E.2d 360, 362 n.2 (1994) (noting that, in 1990, the legislature repealed Code § 19.2-317.1 which provided for direct appeal of certain ineffective assistance claims); see also Walker v. Mitchell, 224 Va. 568, 570, 299 S.E.2d 698, 699 (1983). Hall, however, claims that his guilty pleas were not voluntarily, knowingly, and intelligently made because his counsel failed to discover and reveal to him that Culbertson had not seen him fire the shot and because his counsel did not develop an intoxication defense.

As previously discussed, Hall's misunderstanding of Culbertson's testimony did not prejudice him because, even without Culbertson's testimony that he saw Hall fire the weapon, the evidence was sufficient to prove that Hall shot at Culbertson. Additionally, no evidence proves that Hall entered his guilty pleas involuntarily or without knowledge of the facts due to inadequate investigation by counsel. Furthermore, the evidence shows that defense counsel had an expert witness who testified at sentencing in mitigation concerning the effect of intoxication upon the defendant. Clearly, the defendant and his counsel had considered the issue of intoxication and were prepared to and did introduce expert evidence on that issue. Although the defendant was not entitled to a post-trial hearing for the purpose of appealing his ineffective assistance of

-

counsel claim, nothing in the record supports his claim that his guilty pleas were involuntary because he was not adequately advised of an intoxication defense.  Accordingly, although we do not directly rule on Hall's claim of ineffective assistance of counsel, we find no merit to his claim that his guilty pleas were involuntary because of his counsel's ineffectiveness.

We find that Hall entered pleas of guilty freely, voluntarily, and intelligently.  He was fully cognizant of the constitutional rights he waived by entering the pleas, and he understood the consequences of those pleas.  The Commonwealth did not violate its discovery obligations and did not misrepresent the quantity or quality of incriminating evidence against Hall.  Finally, any erroneous conclusion that Hall may have reached concerning the quality of evidence that the Commonwealth had concerning the attempted murder charge did not constitute a material mistake of fact entitling Hall to withdraw that plea.  Accordingly, we affirm the convictions.

<u>Affirmed.</u>

-